Wm. A. Johnson *v.* Levi Wade.

## WM. A. JOHNSON *v.* LEVI WADE.

1. PRINCIPAL AND AGENT. *Instructions. Must obey. When.* Where cotton has been shipped to a factor, and a bill drawn against the same, with instructions to sell before or at maturity of the bill, the factor must obey the instructions of his principal, and on failure to do so will be held liable for any loss accruing thereby.

FROM RUTHERFORD.

Appeal from the Circuit Court.    W. H. WILLIAMSON, Judge.

E. H. EWING and E. D. HANCOCK for Johnson.

J. W. BURTON for Wade.

NICHOLSON, C. J., delivered the opinion of the Court.

McFARLAND, J., dissenting.

On the 24th of April, 1866, Levi Wade drew his bill for $5,000 on Wm. A. Johnson, at New Orleans, payable in thirty days, that is, on the 24th of May, 1866. On the 28th of April, 1866, he shipped to Wm. A. Johnson thirty-eight bales of cotton, which were received by him in New Orleans on the 4th of May, 1866, twenty days before the bill matured.

On the day of the shipment of the cotton, to-wit, on the 28th of April, 1866, Wade, through his agents, McAlister & Co., advised Wm. A. Johnson of the shipment, and said to him: "Also thirty-eight bales cotton

on account Levi Wade, who has drawn on you for $5,000, at thirty days, we' believe.   Mr. Wade leaves the sale of his cotton to your discretion.   Of course he wants to meet his bill."

The cotton was not sold at the maturity of the bill, and not until the 13th of July, 1866, at which time it brought about $3,500.   Johnson having paid the bill at maturity, applied the $3,500 to re-emburse his advancement, and for the balance, $1,500, brings suit in the Circuit Court of Rutherford.

Wade resisted the suit below, upon the ground that he was damaged by the failure of Johnson to sell the cotton before or at the maturity of the bill, at which time the cotton could have been sold for an amount sufficient, or nearly so, to pay the bill; but that by delaying to sell until the 13th of July, 1866, on account of the decline in cotton, it only brought $3,500.

The deposition of Johnson was taken, and he states: "We made every effort to sell this cotton in time to meet the bill for $5,000, and had it on the market daily, from the date of its receipt until sold, on the 13th of July, 1866; but the cotton being low in quality, stained, dirty, and deficient in staple, was difficult of sale.   It is our custom, when we accept bills drawn against shipments of cotton, to meet the bills at maturity by sale of the cotton.   This we would have done in Wade's case, had it been possible to have found a purchaser; but the cotton was of an unsalable discription, being, as we have stated, low in quality, stained, and deficient in staple, and for this reason

31—vol. 2.

could not be sold sooner, and I sold it for the best price I was -able to obtain after its receipt."

On cross-examination Johnson states that at the time the bill fell due—24th May, 1866—"good ordinary cotton could have been sold for from twenty-seven to thirty-three cents, but I could not make a sale of Wade's at an earlier date, because of its condition and quality.

It is clear from Johnson's testimony that he understood himself as being required, either by the instructions given him, or by his custom in such cases, to sell before or at the maturity of the bill. He excuses himself upon the ground alone of his inability to sell, in consequence of the unsalable condition of the cotton, and puts no reliance on the fact that he was intrusted with a discretion as to the time of selling.

The Circuit Judge charged the jury "that if they found that Johnson could not sell the cotton as instructed, and used ordinary diligence to effect a sale, but could not do so, you will find for him."

Wade had adduced evidence to show that the cotton was of good quality, and not stained, and that at the date of the maturity of the bill it was worth from thirty-one to thirty-three cents.

Upon the issue so made by Johnson, the jury found for Wade—unless they were controlled in their verdict by the construction placed by the Court on the instructions to Johnson.

On this point the Circuit Judge charged: "The Court is of opinion that the letter of instructions read

to you as evidence limits the plaintiff's discretion as to time of sale to the maturity of the bill which defendant had drawn on him, and that he was bound to sell in time to meet it at maturity."

It is clear that Wade's object in making the shipment of cotton was to have funds in Johnson's hands, ready to meet the bill at its maturity. The cotton was received by Johnson about twenty days before the bill matured. We think the meaning of the instructions was, that Wade gave Johnson a discretion from the date of the receipt of the cotton until the maturity, as to the sale of the cotton, "but, of course, he wants the cotton to meet the bill," that is, if Johnson, in his discretion, should not sell before the maturity of the bill; that then the bill should be met by a sale of the cotton. Such was, manifestly, the understanding of the instructions by Johnson, and we think he understood them correctly, and that they were correctly construed by the Circuit Judge in his charge to the jury. Whether, therefore, the jury based their verdict on the charge of the Court as to the proper construction of the instructions, or on the evidence as to the excuse relied on by Johnson for his failure to sell in time, we are of opinion there is no error, and the judgment must be affirmed.